IN THE
UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| ANTON D. WALTON,<br>  Plaintiff,<br><br>v.<br><br>BRANDON GOURLEY, KATIE BLANKENSHIP (FIGUEIRA), BRIAN OAKES, and KENNETH WINSLOW,<br>  Defendant. | Case No. 3:16-cv-03005-JEH |

## Order and Opinion

  Before the Court is the Defendants' motion for summary judgment. (D. 41).[1] The Plaintiff, proceeding *pro se*, initially responded to the motion with a document docketed as an exhibit to his original complaint, which contains various documents produced in discovery. (D. 45). The Defendants then filed a reply to the Plaintiff's filing, construing that filing as a response to their motion. (D. 46). However, Walton then filed a motion seeking additional time to file a response to the motion for summary judgment, he noting that he was attempting to retain counsel. After a hearing, the Court granted Walton's motion and gave him until August 31, 2017 to file an additional response to the pending summary judgment motion. That deadline has passed, and Walton has neither retained counsel nor filed a supplemental response to the Defendants' motion.  Accordingly, the motion is now ripe for a ruling, and, for the reasons stated, *infra*, this Court GRANTS the motion for summary judgment.[2]

---

[1] Citations to the docket are abbreviated as "D. __ at ECF p. ___).
[2] The parties consented to a U.S. Magistrate presiding in this case. (D. 28, 31).

# I

Walton filed a *pro se* complaint, later amended, alleging that City of Springfield, Illinois police officers used excessive force during their arrest of him, in violation of 42 U.S.C. § 1983. (D. 1, 34). Specifically, he alleges that when a police officer tackled him during his arrest, the use of excessive force resulted in the breaking of Walton's left clavicle. *Id*.

The undisputed facts forming the basis of Walton's complaint are as follows. On May 17, 2015, Walton went into a local gas station, walked behind the counter, and pocketed three packs of cigarettes without paying for them. After he left the store, an employee confronted Walton, asking that he return the cigarettes. Walton denied taking the smokes (although he now admits that he did) and walked across the street to avoid further confrontation with the employee.

That employee flagged down Defendant Officer Gourley, who happened to be passing by in his marked squad car. After the employee filled Officer Gourley in on what had happened, the officer, through his car window, told Walton to "stop" and "come here." Although Walton heard the commands, he ignored them, continued to walk away, and increased the speed at which he was doing so—eventually running instead of walking. Officer Gourley began to chase Walton on foot, taking multiple twists and turns as he did so. Although he issued multiple commands for Walton to stop, Walton kept on running.

When Officer Gourley finally caught up to Walton, Officer Gourley applied downward pressure to him which forced both of them to the ground—aka he tackled him. The fall broke Walton's left clavicle. Once on the ground, Walton still refused to comply with Officer Gourley's command to lay on his stomach with his hands behind his back, only doing so after Officer Gourley threatened to pepper spray him. After all this had happened, Defendant Officer Figueira arrived to

assist. Walton was then informed that he was under arrest for retail theft and resisting and obstructing a police officer.

When Walton complained of shoulder pain, Office Gourley saw that Walton's shoulder was scraped and bruised. The Officer then called an ambulance, which took Walton to the hospital. There, an X-ray revealed that Walton had a broken left clavicle. At some point during all of this, Officer Gourley contacted his supervisor, Defendant Sergeant Brian Oakes, and informed him about what had transpired. As for Police Chief Kenneth Winslow, he had no personal involvement in or knowledge of anything that had happened until becoming aware of events during the course of this litigation.

## II

### A

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). The moving party has the burden of providing proper documentary evidence to show the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323- 24 (1986). Once the moving party has met its burden, the opposing party must come forward with specific evidence, not mere allegations or denials of the pleadings, which demonstrates that there is a genuine issue for trial. *Gracia v. Volvo Europa Truck, N.V.*, 112 F.3d 291, 294 (7th Cir. 1997). "[A] party moving for summary judgment can prevail just by showing that the other party has no evidence on an issue on which that party has the burden of proof." *Brazinski v. Amoco Petroleum Additives Co.*, 6 F.3d 1176, 1183(7th Cir. 1993).

Accordingly, the non-movant cannot rest on the pleadings alone, but must designate specific facts in affidavits, depositions, answers to interrogatories or admissions that establish that there is a genuine triable issue; he "'must do more

3

than simply show that there is some metaphysical doubt as to the material fact.'" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256-57 (1986)(quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)); *Hot Wax, Inc. v. Turtle Wax, Inc.*, 191 F.3d 813, 818 (7th Cir. 1999). Finally, a scintilla of evidence in support of the non-movant's position is not sufficient to oppose successfully a summary judgment motion; "there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson,* 477 U.S. at 250.

## B[3]

As an initial matter, no claim exists against Defendants Figueira, Oaks, and Winslow. These defendants had nothing to do with the force involved in the breaking of Walton's clavicle. Officer Figueira showed up after Officer Gourley had taken Walton down, Officer Oaks was merely informed of the events after the fact, and Chief Winslow only learned of the events as party to this litigation. Without any personal involvement in the use of the force at issue in this case, these Defendants are entitled to summary judgment on Walton's claim as it relates to them. *See Chavez v. Illinois State Police*, 251 F.3d 612, 651 (7th Cir.2001) (citations and quotation marks omitted) (personal involvement necessary to state a claim for excessive force in a §1983 action).

## C

Regarding the excessive force claim against Officer Gourley, a claim that a police officer used excessive force in the course of an arrest of a citizen relates to the reasonableness of the seizure, under the standards established by the Fourth

---

[3] The Defendants point out in their reply that Walton has failed to comply with Local Rules when responding to their motion for summary judgment. This is true, although Walton provided a number of documents as evidence for the Court to consider, as well as pointed out the difficulties he has in responding given his *pro se* status. The Court will not decide this case on a technicality given the straightforward, undisputed facts in the case and the Plaintiff's *pro se* status. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (documents filed by *pro se* litigants to be liberally construed).

4

Amendment. *Graham v. Connor,* 490 U.S. 386, 395, (1989); *Abdullahi v. City of Madison,* 423 F.3d 763, 768 (7th Cir. 2005). An officer's use of force is unreasonable from a constitutional point of view only if, "judging from the totality of circumstances at the time of the arrest, the officer used greater force than was reasonably necessary to make the arrest." *Lester v. City of Chicago,* 830 F.2d 706, 713 (7th Cir. 1987). The reasonableness inquiry involves a "careful balancing of the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." *Graham*, 490 U.S. at 396, 109 S.Ct. 1865 (internal quotation marks omitted). Courts must give "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Id.* Courts must also bear in mind that "police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97, 109 S.Ct. 1865. A factual inquiry into an excessive force claim "nearly always requires a jury to sift through disputed factual contentions, and to draw inferences therefrom...." *Abdullahi*, 423 F.3d at 773 (internal quotation marks omitted); *see also Gonzalez v. City of Elgin*, 578 F.3d 526, 539 (7th Cir. 2009).

This case is, however, the rare one where a jury need not sift through disputed factual contentions; all the material facts in this case are undisputed. Specifically, the undisputed facts demonstrate that Walton took the cigarettes without paying for them, Officer Gourley told Walton to stop, Walton did not stop and began running, Officer Gourley chased after Walton while continuing to order him to stop, Officer Gourley eventually caught up to Walton, Officer Gourley

5

tackled Walton, and, finally, Officer Gourley broke Walton's clavicle when they both fell to the ground.

Looking at these facts, the force used by Officer Gourley to effectuate the stop was not excessive. Indeed, it was the amount of force minimally necessary to effectuate the stop of Walton. Stated another way, what amount of force short of physically tackling Walton could Officer Gourley have used under these circumstances? The answer is none. Other than forcibly stopping Walton, Officer Gourely's only other option was to simply let Walton run away. Walton had made it clear by his flight that he had no intention of obeying the verbal commands of Officer Gourley. Accordingly, Officer Gourley's only option was to stop Walton through physical force, especially in light of the fact that Gourley's oral commands continued to be ignored during Walton's flight.

True, Walton's conduct which precipitated the pursuit and use of force was minor and Officer Gourley had no reason to believe that Walton presented an immediate danger to the public's safety. But stealing cigarettes, no matter how minor of an offense, is an offense nonetheless. To hold that an officer may not use physical force to stop a fleeing suspect simply because the offense precipitating the use of force is a minor one would be tantamount to incentivizing petty criminals to always flee from the police; if the police cannot use physical force to stop them, they might as well take their chances at outrunning the pursuing officer. Such a rule cannot be right.

It is unfortunate that Walton's clavicle was broken during the tackle. However, the mere fact that the fall broke his shoulder does not make Officer Gourley's use of force excessive. Walton would have this court reason backward from the fact that his clavicle was broken to a conclusion that the amount of force Officer Gourley must have used was excessive. However, as the Supreme Court has stated:

> Because police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation, the reasonableness of the officer's belief as to the appropriate level of force should be judged from that on-scene perspective. We set out a test that cautioned against the 20/20 vision of hindsight in favor of deference to the judgment of reasonable officers on the scene.

*Saucier v. Katz*, 533 U.S. 194, 205 (2001) (internal citations and quotations omitted). Viewed from this appropriate perspective, Officer Gourley's use of force was not excessive when he tackled Walton to the ground, who was suspected of committing retail theft, had repeatedly refused commands to stop and, indeed, was fleeing. Officer Gourley's only less forcible alternative to tackling Walton was to just let him go--something neither the Constitution, public policy, nor common sense requires any officer to do.

### III

The Defendants' motion for summary judgment (D. 41) is GRANTED. This case is terminated.

*It is so ordered.*

Entered on 9/1/2017

s/Jonathan E. Hawley
U.S. Magistrate Judge